IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>JEREMIAH IEREMIA,<br><br>      Defendant. | CR. NO. 16-00744 (01) DKW<br><br><br>**ORDER DENYING DEFENDANT JEREMIAH IEREMIA'S MOTION TO WITHDRAW HIS GUILTY PLEA** |

## INTRODUCTION

On May 5, 2017, Jeremiah Ieremia entered a guilty plea to Counts 2, 4 and 7 of the Indictment on drug distribution charges, pursuant to a Plea Agreement. He now seeks, prior to sentencing, to withdraw his plea, claiming that: (1) his plea was not valid because former counsel failed to properly advise him of his rights; and (2) former counsel "grossly mischaracterized" the term of his likely sentence. On July 9 and 19, 2018, the Court received testimony from Ieremia; his former counsel, John Schum, Esq.; and Kristin Germosen, the Supervisor of Education at the Federal Detention Center ("FDC") Honolulu. Upon consideration of the live testimony, the supporting and opposing memoranda, the arguments of counsel, the record, and the relevant legal authorities, the Court DENIES Ieremia's Motion to Withdraw his Guilty Plea.

## BACKGROUND

Ieremia was charged with drug trafficking offenses in a November 30, 2016 Indictment, Dkt. No. 1, and was arrested in the Northern District of California on December 8, 2016, Dkt. No. 47.   Count 1 charges him with conspiracy to distribute and to possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; Counts 2 and 4 charge him with distributing and possessing with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Sections 841(a)(1) and 841(b)(1)(B); and Count 7 charges him with distribution and possession with the intent to distribute 50 grams or more of methamphetamine in violation of Sections 841(a)(1) and 841(b)(1)(A).

Ieremia was one of eleven defendants charged in the Indictment, and this matter is one of six related cases in which a total of 37 defendants were charged with narcotics trafficking and related crimes.   The case was declared complex on December 19, 2016, Dkt. No. 86, and the court appointed a coordinating discovery attorney on December 22, 2016, Dkt. No. 93.

## I.   Ieremia's Guilty Plea

Schum was appointed as counsel for Ieremia shortly before his arraignment and initial appearance in the District of Hawaii on January 12, 2017.   CJA Appointment, Dkt. No. 120 (Nunc Pro Tunc 1/9/17); Decl. of John Schum ¶ 1, Dkt.

No. 111. Schum continued to represent Ieremia during plea negotiations, at his May 5, 2017 change of plea hearing, during Ieremia's presentence interview and following receipt of the draft Presentence Investigation Report ("PSR"), up until December 7, 2017, when the court granted Schum's motion to withdraw as counsel.[1] *See* Dkt. No. 292 (12/7/17 Court Minutes); Schum Decl. ¶ 2.

In the pleadings and in their testimony, Ieremia and Schum dispute the course of proceedings, including the discovery that was made available to Ieremia, the trial strategy employed, the plea agreement negotiations, and Ieremia's prospective sentence. For instance, Ieremia initially claimed that no discovery was made available to him before entering his guilty plea. *See* Ieremia Decl. ¶ 4, Dkt. No. 408-4. During the evidentiary hearing, however, he testified that Schum sent him discovery from the United States Attorney's Office's initial production, including lab reports and an audio file of Ieremia's interview with agents in San Francisco following his arrest in 2016. He also testified that Schum explained to him the voluminous nature of the discovery during their first meeting, including FDC Honolulu's policy that would not permit Schum to provide him with more than 30,000 pages of discovery. Ieremia explained that although Schum did send eight

_____

[1]Schum's Declaration in support of his motion to withdraw as counsel avers that he "received a declaration from Mr. Ieremia raising ineffective assistance in my representation of him by stating, in sum, that I did not adequately explain the plea agreement he signed, that I pressured him into accepting the deal despite his innocence and that he wants to file a motion to set aside his guilty plea." Dkt. No. 284 ¶ 3.

CDs of discovery to FDC Honolulu for Ieremia's review, he was told by FDC Honolulu staff that none had been received. Ieremia admitted that he never advised Schum of his difficulties locating the CDs, nor did he follow up with FDC Honolulu staff for assistance. Ieremia further admitted that he later found the eight CDs originally provided by Schum under another set of discovery CDs provided by his new counsel.

According to Schum, he delivered a full set of all discovery he received on eight CDs to FDC Honolulu, accompanied by a Discovery Material Authorization Form, dated February 18, 2017. Schum Decl. ¶ 6; *see also* Decl. of Kristin Germosen, Ex. B, Dkt. No. 451-2.[2] Schum testified that Ieremia told him, in approximately March or April of 2017, that he had gone "a couple of times" to review his e-discovery at the FDC Honolulu law library, but because it was so laborious and time-consuming, Ieremia quit going out of frustration. Schum agreed that at no point did Ieremia inform him of any difficulties locating or accessing the discovery materials. Schum Decl. ¶ 7. In Schum's recounting of events, after

_____

[2]FDC Honolulu records indicate that Ieremia requested access to the law library for e-discovery review on several occasions between February 16, 2017 and March 14, 2017, but there are no records confirming whether he actually visited the library or accessed his e-discovery materials on the requested dates. *See* Germosen Decl. ¶¶ 10–11, Ex. C, Dkt. No. 451-3. It is clear, however, based upon Bureau of Prisons records and his testimony, that Ieremia never filed any complaints or formal grievances with FDC Honolulu staff regarding lack of access to his e-discovery or the failure of law library staff to provide his e-discovery for review upon request. *See* Germosen Decl. ¶¶ 13–15, Ex. C, Dkt. No. 451-4.

personally reviewing the discovery related to Ieremia, *id*. at ¶ 5, he discussed what he considered to be the most important parts of that discovery with Ieremia himself before the change of plea. *Id*. at ¶ 8. That included Ieremia's rap sheet, arrest reports, a "video recording of his statement to law enforcement,"[3] and more than 100 of the most significant intercepted telephone calls and text messages. *Id.* at ¶¶ 9–10.

Beyond discovery, Ieremia and Schum also presented contradictory facts regarding the evaluation of the evidence and the applicable law. Ieremia initially declared that Schum "did not advise me of any of my defenses." Ieremia Decl. ¶ 4. At the evidentiary hearing, however, Ieremia admitted that Schum advised him about the probable weakness of certain defenses, including relying on the reference to "shoes" as a proxy for drugs during the course of his wiretapped communications with his co-defendants.

Schum emphasized that he reviewed potential defenses at length and in detail with Ieremia, and repeatedly informed him that he was willing to take the case to trial despite what Schum perceived as a weak defense. Schum Decl. ¶ 11–14. Schum agreed that he discussed the viability of Ieremia's "shoe" defense, and explained that a witness would likely be called to testify that "shoes" was used on

---

[3]Schum's testified that he recalled watching a video recording of Ieremia's interview with law enforcement. On cross-examination, however, he acknowledged the possibility that it was instead an audio, and not a video, recording.

the intercepted communications in place of "drugs" or "methamphetamine" to avoid detection. He also explained to Ieremia that the lack of an explicit agreement to sell drugs would not likely be a strong defense because an agreement could be inferred from conduct. *Id.* at ¶ 13. Schum also testified that he explained his view to Ieremia that it would be futile to attempt to exclude the numerous, incriminating wiretap communications based upon a claim of an improper warrant. Schum candidly conveyed his belief that Ieremia would likely be convicted at trial based on the strength of the evidence, and he advised Ieremia that pleading guilty was his best option. *Id.* at ¶ 15.

Ieremia testified that during his third meeting with Schum at FDC Honolulu in early Spring 2017, he asked Schum if the Government was offering him a deal, and if so, how much time he was facing. Schum responded that he would talk to the Assistant United States Attorneys prosecuting the case. During their next meeting, Schum told Ieremia that the Government was offering him a deal to change his plea, and according to Ieremia, the Government was agreeing to a sentence of imprisonment of 11 to 12 years. Ieremia told Schum that he would agree to such a sentence, and Schum said he would bring Ieremia a plea agreement to review at a later meeting.

Schum negotiated a Plea Agreement with the Government and brought it to FDC Honolulu to discuss its terms with his client. Ieremia testified that although

Schum went over portions of the Plea Agreement with him during that meeting, they ran out of time to go over each page in detail, and Ieremia did not really understand its terms. Schum provided Ieremia a copy of the Plea Agreement for him to review on his own at FDC Honolulu. Ieremia further testified that Schum never explained to him any aspect of the sentencing guidelines, including the applicable guideline offense level, nor went over any guidelines charts or calculations during their meetings. He also claims that Schum never explained to him the Court's role in determining the applicable guideline range or that the Court would consider relevant conduct and his prior criminal history in making that determination. Ieremia Decl. ¶¶ 9–10.

Schum contradicts most of these assertions. He claims that he advised Ieremia about the sentencing guidelines both before and after presenting him with the Plea Agreement. According to Schum, Ieremia initially refused to discuss the guidelines with him at all, but relented once he became amenable to plea negotiations with the Government. Schum Decl. ¶ 16. Prior to negotiations, Schum calculated the drug amounts, advised Ieremia about possible guidelines adjustments—including a possible role enhancement and reduction for pleading guilty—and informed him that the "best" sentence he could hope for was approximately 11.5 years. *Id.* Schum avers he also advised his client that the Court would consider relevant conduct and Ieremia's prior criminal history both in

determining the applicable sentencing guidelines range and in imposing an ultimate sentence. *Id.* at ¶ 19. Schum claims he went over the criminal history contained in Ieremia's rap sheet and discussed how it might affect the sentencing guidelines calculation, *id.*, and testified that he settled on criminal history category II or III as the likely outcome, using criminal history category II to reach his "best" case of 11 to 12 years. According to Schum, he told Ieremia that he should not accept the Plea Agreement if he did not agree with anything Schum had covered with him. *Id.* at ¶ 20.

Schum explained to Ieremia that despite their review of the sentencing guidelines, the Court would conduct its own evaluation and was not bound by the guidelines-related stipulations in the Plea Agreement. *Id.* at ¶ 18. Schum also attests that he told Ieremia that a court probation officer would prepare a PSR containing its own guidelines calculations and recommending a specific sentence to the Court. *Id.* Schum informed Ieremia that the guidelines calculation in the PSR could be higher than the one in the Plea Agreement, and that the Court was not bound by the PSR's calculation either. *Id.* Ieremia denies that Schum advised him of any of this at any time.

Prior to the May 5, 2017 plea hearing, the Government provided Schum with a revised Plea Agreement. The only substantive change from the Plea Agreement that Schum had previously reviewed with Ieremia was the addition of forfeiture

provisions.   Decl. of Marion Percell ¶ 3, Dkt. No. 424-2.   Defendant Ieremia

signed the Plea Agreement on May 5, 2017.[4]   Schum Decl. ¶ 22.   The Plea

Agreement does not include an agreed-upon sentence, but does include several

agreements relevant to sentencing, including a stipulated total offense level of 32.[5]

---

[4]Under the terms of the Plea Agreement, Ieremia entered a voluntary plea of guilty to Counts 2, 4 and 7.   The Government agreed to dismiss Count 1 as to Ieremia at the time of sentencing.
[5]The Plea Agreement includes the following sentencing-related stipulations at paragraph 10:

a.   The guideline applicable to Counts 2, 4, and 7 of the Indictment is U.S.S.G. § 2D1.1.   Pursuant to U.S.S.G. § 3D1.1(d), the three offenses are grouped together.

b.   Pursuant to U.S.S.G. § 2D1.1, comment. (n.8(D)), the quantity of the mixture or substance containing a detectable amount, of methamphetamine involved in Counts 2 and 4 combined is the equivalent of approximately 1,361 kilograms of marijuana, and the quantity of methamphetamine involved in Count 7 is the equivalent of 4,462 kilograms of marijuana. Accordingly, the amount involved in the offenses to which defendant agrees to plead guilty is between 3,000 and 10,000 kilograms of marijuana, and the Base Offense Level is 32.   U.S.S.G. § 2D1.1(c)(4).

c.   No specific offense characteristics apply.

d.   The defendant was a manager or supervisor, but not an organizer or leader, in a criminal activity that involved five or more participants.   Accordingly, the offense level is increased by 3 levels.   U.S.S.G. § 3Bl.l(c).

e.   As of the date of this letter, it is expected that defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

f.   The United States Attorney agrees that defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely

Plea Agreement ¶ 10, Dkt. No. 188.   The Plea Agreement also indicates that its provisions are not binding on the Court.[6]

At the change of plea hearing on May 5, 2017, Ieremia was sworn to answer the Court's questions truthfully.   When asked by the Court: "you have now taken an oath to answer the Court's questions this morning truthfully, and if you do anything other than that, you could be subjecting yourself to additional charges.   Do you understand that, sir?"   Ieremia responded, "Yes, Your Honor."   The Court then

---

manner, so as to permit the government to avoid preparing for trial as to defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if defendant is otherwise eligible.   Defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the probation office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

g.      In accordance with the above, the parties agree that if the defendant has clearly demonstrated acceptance of responsibility for his offense and the United States Attorney moves for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), the total offense level will be 32.

[6]For example, the Plea Agreement states: "[t]he parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing."   Plea Agreement ¶ 11.   It also provides: the "[d]efendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.   Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source."   Plea Agreement ¶ 14.

proceeded with its Rule 11 colloquy.[7]   Ieremia indicated that no one had threatened,

forced or coerced him into pleading guilty, nor had anyone threatened, forced or

coerced anyone close to him for the same purpose.   5/5/17 Tr. at 5, Dkt. No. 382.

With respect to the Plea Agreement, the Court questioned Ieremia and counsel

as follows:

> THE COURT:      You've entered into a plea agreement with the United States; is that correct?
>
> THE DEFENDANT:      (Inaudible).
>
> THE COURT:      Have you read that agreement, plea agreement in full?
>
> THE DEFENDANT:      (Inaudible).
>
> THE COURT:      Confident that you understand each of the terms of your plea agreement with the United States?

---

[7]Because the proceedings were recorded by electronic sound recording without the presence of a live court reporter, portions of the transcription of the May 5, 2017 change of plea recording reflect that Ieremia's responses to the Court's questions were "inaudible."   *See* 5/5/17 Tr., Dkt. No. 382. Apparently, the recording equipment failed to capture each of Ieremia's full statements. Although some of his responses are transcribed as "inaudible," if the Court had not been able to hear him, or if his response had been equivocal, the Court would have unquestionably asked him to speak up or taken appropriate steps in response to any statement from Ieremia that suggested uncertainty or confusion during the colloquy.   To be clear, while the transcript does not reflect Ieremia's precise responses to the Court's questioning, the Court's independent review of the record and pleadings in this matter indicate that Ieremia did respond appropriately to the questions, consistent with a defendant who intended to plead guilty to the charges filed.   At no point during the change of plea hearing did Ieremia indicate that he did not understand the Court's questions or wished to do anything other than plead guilty.   Ieremia confirmed as much during his testimony on July 9, 2018.   *See also* Schum Decl. ¶ 24 (noting that "Ieremia responded in the affirmative to each one the questions for which his response is listed is '(Inaudible)' in the portions of the transcript quoted in the Motion").   Indeed, the Court would not and could not have proceeded to take his guilty plea if there was any reason, based upon Ieremia's responses, to believe that he failed to understand his rights or any of the information provided to him by the Court.

THE DEFENDANT:        (Inaudible).

THE COURT:        Do you have any questions at all with respect to terms of that agreement?

THE DEFENDANT:        (Inaudible).

THE COURT:        And I suspect part of the reason you don't have any questions is because you discussed that agreement in full with counsel; is that true?

THE DEFENDANT:        (Inaudible).

THE COURT:        Mr. Schum, are you satisfied that Mr. Ieremia understands the terms of his plea agreement with the United States?

MR. SCHUM:        I am, Your Honor.

****

THE COURT:        Were there any promises made to you by the United States that are not reflected in the plea agreement?

THE DEFENDANT:        No, Your Honor.

THE COURT:        In other words, the plea agreement -- another way of saying the same thing, but the plea agreement reflects the entirety of your agreement with the United States; is that correct?

THE DEFENDANT:        Yes, Your Honor.

THE COURT:        You understand, sir, that the Court is not required to accept your plea agreement and that I could reject it after considering a presentence investigation report that will be prepared after the conclusion of this morning's hearing?

THE DEFENDANT:        Yes, Your Honor.

> THE COURT: You further understand that any stipulations in your plea agreement with the United States are between you and the United States and the Court is not bound by those stipulations?
>
> THE DEFENDANT: Yes, Your Honor.

5/5/17 Tr. at 9–11. The Assistant United States Attorney then described the essential terms of the Plea Agreement, including the appellate waiver provisions and the following account of the stipulations between the parties:

> In Paragraph 10 it sets forth certain stipulations to the applicable sentencing guidelines in this case as to the three counts to which he pleads guilty. The bottom line of which is that if he in fact accepts responsibility and receives the third point, which the government agrees that he's entitled to, if he meets the requirements with -- with the acceptance of responsibility, the bottom line is that the calculation, this is in Paragraph 10(g), the total offense level for the offense will be 32.
>
> The plea agreement makes clear, as the Court has already stated, that the Court is not bound by those stipulations. So the parties agree to them.

5/5/17 Tr. at 11–12.

Next, the Court itself explained the application of the sentencing guidelines to Ieremia and confirmed that he had discussed them with counsel and understood the role of the Judge, the PSR, and the general nature of the sentencing process:

> THE COURT: All right. With respect to sentencing, United States law establishes detailed sentencing guidelines that apply to those who are convicted of, which includes those who plead guilty to federal crimes. The sentencing judge must

consider those guidelines. In addition, the sentencing judge must consider the statutory sentencing factors that are contained in 18, United States Code, Section 3553(a). The sentencing guidelines however are just what the name implies, they are guidelines, which means that they are advisory on this Court only. Do you understand that?

THE DEFENDANT: (Inaudible).

THE COURT: Have you discussed how the federal sentencing guidelines, sir, might apply to your case with your counsel, Mr. Schum?

THE DEFENDANT: (Inaudible).

THE COURT: Do you understand that the Court -- really no one at this point, including the Court, can determine precisely how those federal sentencing guidelines apply to your case and will not be able to do that until after a presentence investigation and investigation report have been completed, and after both your attorney as well as attorney for the United States have the opportunity to comment on or object to portions of that report?

THE DEFENDANT: (Inaudible).

THE COURT: You understand, sir, that after the Court determines how those guidelines apply to your case, the Court applies not just the guidelines but the statutory sentencing factors that I mentioned a minute ago, the ones that are set forth at 18 U.S.C. 3553(a). The Court could impose a sentence that is either more or less severe than what the sentencing guidelines call for.

THE DEFENDANT: (Inaudible).

THE COURT: Do you understand, sir, that if a sentence is imposed that is more severe than what you expect or more severe than what the sentencing guidelines call for, you will nonetheless

be bound by your plea and plea agreement and will not have a right to withdraw (indiscernible)?

THE DEFENDANT:     (Inaudible).

THE COURT:     You understand further, sir, that despite any discussions you may have had with your counsel, with counsel for the United States or with anyone else with regard to the type of sentence you are likely to receive or the duration of the sentence you are likely to receive, the Court is not bound by those discussions nor is the Court bound by any recommendations that counsel may wish to provide to it, and that a sentence could be imposed more severe than what you expect up to the maximum permitted by law; do you understand that?

THE DEFENDANT:     (Inaudible).

THE COURT:     Has anyone made any promises to you, Mr. Ieremia, with regard to what your sentence will be?

THE DEFENDANT:     (Inaudible).

5/5/17 Tr. at 18–20.   Because Ieremia indicated that he understood the Court's explanation of the sentencing guidelines, acknowledged the Court's admonitions, and agreed that no promises had been made with respect to his sentence, the Court continued with the Rule 11 colloquy.

After the Government described the elements of the three counts to which Ieremia was pleading guilty and outlined the evidence the United States intended to offer if the case were to proceed to trial, Ieremia agreed that the factual basis, as set forth by the Government, was true.   5/5/17 Tr. at Tr. at 25–26.   The Court then instructed Ieremia to explain, in his own words, the conduct that made him guilty of

Counts 2, 4, and 7, and then followed up by canvassing the defendant on the specific

counts:

> THE DEFENDANT:     On these three occasions that I am charged (indiscernible) involved (indiscernible).

> THE COURT:     All right.   And the first of these occasions as charged in Count 2 occurred on or about May 30th of 2016?

> THE DEFENDANT:     Yes, Your Honor.

> THE COURT:     And that's when you sold approximately a pound of methamphetamine to your co-defendant Mr. Kuresa and you knew that his intention once he acquired this was to sell at least some of that to another co-defendant, Ms. Lupe; is that true?

> THE DEFENDANT:     Yes, Your Honor.

> THE COURT:     And the second of these occasions occurred on or about June 14th of 2016, that's as charged in Count 4, something similar occurred, this time you sold approximately half a pound of methamphetamine also to your co-defendant Mr. Kuresa, but you did so through a courier, Ms. Conleysha Gaston; is that fair?

> THE DEFENDANT:     Yes, Your Honor.

> THE COURT:     Okay.  And finally, on July 22nd, the third of these three occasions that you just referred to, of 2016, as charged in Count 7, again through your courier, Ms. Gaston, you sold a half a pound of methamphetamine for the third time to Mr. Kuresa, your co-defendant, correct?

> THE DEFENDANT:     Yes, Your Honor.

> THE COURT:     All right.  And that methamphetamine that you sold to Mr. Kuresa on that particular day, July 22nd of 2016,

was in fact seized by federal law enforcement -- excuse me, by local law enforcement but tested by federal law enforcement and found to consist of approximately 223.1 grams of 98 pure methamphetamine, is that your understanding?

THE DEFENDANT:　　(Inaudible).

THE COURT:　　Now, each of these three occasions I think you've made clear already but just to be absolutely clear, you knew that what you were selling on each of these three occasions was in fact methamphetamine?

THE DEFENDANT:　　(Inaudible).

THE COURT:　　Are both counsel then satisfied that a factual basis for Mr. Ieremia's plea of guilty to Counts 2, 4 and 7 has been established?

MS. PERCELL:　　Yes, Your Honor.

MR. SCHUM:　　I agree, Your Honor.

THE COURT:　　Mr. Ieremia, I'll turn to you then, sir.　As to Count 2 of the indictment, how do you plead, guilty or not guilty?

THE DEFENDANT:　　Guilty, Your Honor.

THE COURT:　　As to Count 4 of the indictment, how do you plead, guilty or not guilty?

THE DEFENDANT:　　Guilty, Your Honor.

THE COURT:　　And finally as to Count 7 of the indictment, how do you plead, guilty or not guilty?

THE DEFENDANT:　　Guilty.

> THE COURT: Court finds that the defendant Mr. Ieremia
> understands the nature of this morning's proceedings and is
> competent to enter a knowing and informed plea. And the
> Court further finds that the defendant has in fact entered a
> knowing and informed and voluntary plea of guilty to Counts 2,
> 4 and 7 of the indictment without coercion, force or threat.
> Court finds that the defendant -- defendant's plea of guilty is
> supported by an independent basis in fact containing each of the
> essential elements of those three counts and that the defendant
> appreciates and understands the trial and civil rights that he
> would have in the absence of pleading guilty, but he nonetheless
> knowingly and voluntarily elects to waive those rights. And
> finally, the Court finds that in pleading guilty the defendant
> understands the factors that the Court will consider at the time of
> sentencing, including the potential penalties that apply to each of
> these counts as well as the mandatory minimum sentencing --
> sentences that apply to each of these three counts.

5/5/17 at 26–28.

After the May 5, 2017 change of plea hearing, Ieremia met with Schum and a

United States Probation Officer at FDC Honolulu for a presentence investigation

interview. After Probation completed a draft PSR, Schum met with Ieremia

sometime in September 2017 and advised him that under the guidelines calculation

set forth in the draft PSR, the probation officer had determined an applicable

guideline range of 292 to 365 months, based upon a total offense level of 38 and a

criminal history category of III. Upon learning of the draft PSR, Ieremia became

visibly upset and asked Schum not to do any more work on his case. Schum claims

that he attempted to explain to Ieremia once again that the Court is not bound by the

guidelines calculations in the PSR, that the Government had stipulated in the Plea

Agreement to the relevant conduct, and that both parties would file a response to the draft PSR reflecting their agreement that the total offense level should be 32, not 38.[8] Schum also attempted to tell Ieremia that it was still possible that the Court could sentence him to a term approximating 11.5 years, as contemplated by the parties. Schum acknowledged in his testimony, however, that Ieremia was very upset during the meeting and likely was not listening to his explanations.   In November 2017, Schum received by email an affidavit from Ieremia informing him that he wished to withdraw his guilty plea.   Schum then moved to withdraw as counsel on December 4, 2017.   Dkt. No. 284.

## II.     **Motion to Withdraw Guilty Plea**

On June 4, 2018, through his new counsel, Ieremia moved to withdraw the guilty plea that the Court accepted on May 5, 2017.   Ieremia contends both that (1) his plea was not valid because he did not understand his rights when he entered it; and (2) his former attorney grossly mischaracterized his sentencing exposure and the law when advising him to enter the guilty plea.   Motion at 2, Dkt. No. 408.

At the July 9, 2018 hearing, Ieremia contradicted his prior sworn testimony at his May 5, 2017 change of plea hearing and recanted the factual basis for his plea. According the Ieremia, he said "Yes" in response to the Court's questions at his

---

[8]A total offense level of 32, when combined with a criminal history category III, would yield a guidelines range of 151 to 188 months.   The same total offense level at the criminal history category II used by Schum as Ieremia's "best" case would yield a range of 135 to 168 months.

change of plea hearing because Schum told him to say yes. That is, Ieremia now claims that he said "Yes" to the Court's inquiries during the Rule 11 colloquy, whether or not it was a true answer. He also testified in support of his present Motion that although he previously read the Plea Agreement, he never actually understood it.

Schum disputes that he told Ieremia to lie or to say "Yes" in response to each question from the Court during the change of plea hearing. He claims that prior to the change of plea, he explained to Ieremia what would happen at the hearing, that the Judge would ask him questions and that he would have to admit to the conduct and facts in the Plea Agreement and explain why he is guilty of the offenses. In Schum's retelling of events, he conveyed to Ieremia that if he did not successfully complete his change of plea hearing, he would not have the benefit of the Plea Agreement and would "be back at square one."

Schum believed that the Plea Agreement reached with the Government was "a great deal," and maintains that it would be a mistake for Ieremia to withdraw his guilty plea. Schum Decl. ¶ 15. According to Schum, the Plea Agreement remains Ieremia's best available option.

## **LEGAL STANDARD**

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw from a plea of guilty before sentencing if "the defendant can show a

fair and just reason for requesting the withdrawal." "The burden of demonstrating such a fair and just reason rests with defendant; however, the standard is applied liberally." *United States v. Jones*, 472 F.3d 1136, 1141 (9th Cir. 2007) (citing *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005)). The defendant need not show that the plea itself was invalid in order to prevail. *Davis*, 428 F.3d at 806.

"Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *See United States v. Ortega–Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). However, a mere change of heart about the decision to plead guilty is not a fair and just reason. *United States v. Rios–Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987); *United States v. Maxwell*, 498 F.3d 799, 802 n.3 (8th Cir. 2007); *United States v. Washington*, 480 F.3d 309, 316–17 (5th Cir. 2007).

In the Ninth Circuit, "a defense counsel's erroneous advice may warrant withdrawing a plea even if the defendant does not prove that he would not have pleaded guilty but for the erroneous advice." *Davis*, 428 F.3d at 808. Thus, the fair and just reason standard may be satisfied by showing that "counsel's gross mischaracterization plausibly could have motivated his decision to plead guilty." *Id*. at 808.

Statements made during the plea hearing are entitled to a strong presumption of veracity in later attacks on the plea, *United States v. Ross*, 511 F.3d 1233, 1236–37 (9th Cir. 2008) (citations omitted), and a court may also consider the time elapsed between the entering of such a plea and the defendant's withdrawal request, *United States v. Garcia*, 401 F.3d 1008, 1013 (9th Cir. 2005) (citations omitted). Ultimately, however, each case must be reviewed in the context in which the motion to withdraw guilty plea arose to determine whether a fair and just reason exists to permit withdrawal. *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008).

## **DISCUSSION**

Because Ieremia's plea was valid, and because former counsel did not "grossly mischaracterize" Ieremia's sentencing exposure, as explained below, Ieremia offers no fair and just reason for withdrawing his plea. His Motion is therefore DENIED.

As a preliminary matter, the Court addresses the credibility of the witnesses who testified at the evidentiary hearing on the Motion. In carefully assessing the testimony of the witnesses, including the substance of the testimony, its consistency with other statements and information provided to the Court, as well as the demeanor and manner in which the witnesses testified, the Court finds the July 19, 2018 testimony of Schum to be credible and consistent with the other evidence in the

record, including the events at the Rule 11 change of plea hearing, as to material details.   As discussed more fully below, the Court does not find portions of the July 9, 2018 testimony of Ieremia to be credible on the specific issue of Schum's discussion and advice regarding the application of the sentencing guidelines to this case, and whether Ieremia possessed sufficient understanding of the Plea Agreement, such that the Court finds Ieremia's plea to have been voluntarily entered, and not the product of coercion.   Ieremia's credibility is impugned, in part, by his July 2018 testimony that is inconsistent with his May 21, 2018 Declaration.

## I.       Ieremia's Plea Was Valid, and Was Knowingly and Voluntarily Made

The record establishes that Ieremia's decision to plead guilty was an informed, knowledgeable, and voluntary act.   Although Ieremia presently claims that he lied during the Rule 11 colloquy, his decision to mislead the Court does not make his knowing and voluntary guilty plea otherwise invalid, and does not serve as a proper basis to withdraw his plea.[9]

---

[9]On this point, the Tenth Circuit reasoned in *United States v. Soto*, 660 F.3d 1264 (10th Cir. 2011):

> Whatever else may be said about its powers under Rule 11(d), we hold that a district court does not abuse its discretion in refusing a motion to withdraw where, as here, the defendant's request relies solely on a claim that his plea wasn't knowing and voluntary and that claim is predicated on an intentional falsehood. Fairness and justice do not indicate that a party may compel any judicial action on the basis of a lie—let alone an action that would require the court, the government, as well as victims and witnesses to endure the significant cost, time, and all the other tribulations associated with a trial.   Mistake or confusion, in the interest of fairness and justice, may merit more latitude from a court.   But an intentional

A plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Harpham*, 564 F. App'x 907, 908 (9th Cir. 2014) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Stated differently, a plea must be knowing and voluntary, which requires that "the defendant possess[] an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). In addition, Rule 11 requires judges to determine that a plea has a factual basis. Fed. R. Crim. P. 11. To satisfy this requirement, "[t]he judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.'" *McCarthy*, 394 U.S. at 467 (citation omitted); *see also United States v. Jones*, 472 F.3d 1136, 1140 (9th Cir. 2007) (rejecting defendant's assertion that his plea was invalid because he did not understand the facts to which he stipulated in his plea agreement, where the facts admitted in the plea colloquy supported a finding of guilt). "Where, as here, a defendant is represented by counsel during the plea process and enters his

---

       falsehood under oath about such a material matter as a plea agreement is not something any District Court is forced to countenance.

*Id.* at 1267–68. *See also United States v. Vigil*, No. 2:08-CR-108-SWS-2, 2013 WL 12322079, at *12–13 (D. Wyo. Nov. 1, 2013), *aff'd*, 605 F. App'x 757 (10th Cir. 2015) (denying motion where defendant "seeks the benefit of withdrawing his plea because he now claims to have lied under oath during his change of plea hearing," but the court "finds nothing to support [defendants]'s latest self-serving testimony that he lied (repeatedly) to [the judge] at the change of plea hearing and was under the influence of narcotics to the extent he was unable to knowingly, intelligently and voluntarily enter a plea").

plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56–57 (quoting *McMann v. Richardson*, 397 U.S. 759 (1970)).

First, Ieremia's plea was knowing and intelligent. The Rule 11 hearing was complete and thorough, and there is no contention otherwise by defendant. Such completeness strongly suggests that defendant comprehended the Plea Agreement, including the guideline stipulations and sentencing process and factors outlined during the hearing. *See United States v. Nostratis*, 321 F.3d 1206, 1209 (9th Cir. 2003). During the plea proceeding, defendant stated—under oath—that he had sufficient time to discuss the facts of his case and his decision to enter a plea with his counsel. He confirmed that he had read the entire Plea Agreement, discussed it with Schum, and had all of his questions answered by Schum before signing the agreement. Such declarations in court, under oath, carry a "strong presumption of verity." *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) (citation omitted).[10]

---

[10]*See also United States v. Ross*, 511 F.3d 1233, 1236–37 (9th Cir. 2008) (statements made during the plea hearing are entitled to a strong presumption of veracity in later attacks on the plea). There are important reasons for this policy—

> The Rule 11 colloquy is designed to provide a structure to protect the defendant against making an uninformed and involuntary decision to plead guilty and to

Moreover, these under-oath statements are consistent with the credible testimony offered by Schum that he explained to Ieremia both the applicable guidelines and the guideline stipulations contained in the Plea Agreement. "Although defendant may not have possessed a trained lawyer's knowledge of the guidelines, he certainly understood how the guidelines applied to his case, how they operated, and the guideline stipulations contained in the plea agreement," based upon his conversations with Schum and as a result of the Court's Rule 11 colloquy. *United States v. Sloan*, No. CR. 06-00468 JMS, 2007 WL 4208577, at *5 (D. Haw. Nov. 28, 2007). He may not now disavow that understanding in order to attack his plea.

Second, Ieremia's plea was voluntary and free from coercion, despite his subsequent testimony that he only answered "Yes" to the Court's questions because

---

protect the public from an unjust judgment of guilty when a public trial has not been conducted. Because a trial is not held when a defendant pleads guilty, the court must be able to rely on the defendant's self-interest and his truthful testimony in deciding to find the defendant guilty based on a guilty plea. . . . We repeat what we said before, that an appropriately conducted Rule 11 colloquy can only serve meaningfully if the court is entitled to rely on the defendant's statements made under oath to accept a guilty plea. *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc); *see also United States v. Wilson*, 81 F.3d 1300, 1307 (4th Cir. 1996) (noting that the key to whether a motion to withdraw a guilty plea should be granted is "whether or not the Rule 11 proceeding was properly conducted"). To view the Rule 11 plea colloquy as a procedural game in which pieces are moved and manipulated to achieve a result that can beat the system established for providing due process to the defendant undermines that very process. And when a defendant asserts, in support of a motion to withdraw a guilty plea, that he lied in pleading guilty—and repeatedly so—he provides an example of such manipulation.

*United States v. Bowman*, 348 F.3d 408, 416–17 (4th Cir. 2003).

Schum told him that he had to if he wanted his plea to be accepted by the Court. Even accepting Ieremia's current version of events as true, his allegations do not amount to coercion.[11]   The testimony demonstrates only that Ieremia may not have been truthful to the Court when admitting to the factual basis of his plea during the Rule 11 colloquy.   Ieremia did not elaborate as to which questions from the Court he did not answer truthfully—*e.g.* whether they related to elements of his offenses or facts irrelevant to his guilt—nor does he advance any claim of factual innocence.[12]

Moreover, his claim that he had insufficient time to review the Plea Agreement, and thus did not fully understand its terms, is not supported by credible testimony.   Schum credibly testified on July 19, 2018 about his discussions with defendant regarding the benefits and drawbacks of pleading guilty, the weakness of specific defenses, and that he told Ieremia that he was willing to go to trial if that was

---

[11]*See, e.g.*, *United States v. Spear*, No. CR 07-00299 DAE, 2011 WL 3704967, at *8 (D. Haw. Aug. 24, 2011), *aff'd*, 577 F. App'x 726 (9th Cir. 2014) ("Although [counsel] was candid with Defendant, and told him that he should seriously consider pleading guilty, [counsel]'s opinion was grounded in his appraisal of the facts and issues involved in the case.   Such advice does not rise to the level of coercion."); *Id.*, 2011 WL 3704967, at *17 (rejecting defendant's assertion of coercion by his attorney at change of plea hearing, explaining that "Defendant argues that in giving his responses, he was 'simply doing what his attorney told him to do', but the record of the plea hearing belies this assertion . . . Defendant was not merely parroting responses, but rather that he was paying close attention to each question and the proceedings as a whole [and] Defendant acknowledged several times during the plea colloquy that he was voluntarily entering his plea, that no one pressured or coerced him to plead guilty, and that [counsel] explained to him the charges and consequences of proceeding with the change of plea hearing").

[12]The failure to assert a claim of factual innocence is not held against a defendant seeking to withdraw a plea under Federal Rule of Criminal Procedure 11(d)(2)(B).   *United States v. Garcia*, 401 F.3d 1008, 1012 (9th Cir. 2005).

what Ieremia wanted.   The record shows that Ieremia was not coerced to plead guilty, but instead was given sufficient time to consider his prospective guilty plea, to review the terms of the Plea Agreement with Schum at FDC Honolulu, and that Schum explained the addition of the forfeiture provision to Ieremia at the courthouse prior to his change of plea hearing, and before Ieremia signed the agreement. *Sloan*, 2007 WL 4208577, at *5 ("Although optimally defendant would have had more time to read the plea agreement prior to his change of plea, the court concludes that he fully understood its terms and the plea itself was voluntary.").

In sum, considering the transcript of the May 5, 2017 plea hearing as a whole, and the relative credibility of Schum and Ieremia's testimony on the current Motion, the Court concludes that Schum adequately explained the sentencing guidelines to defendant, and that defendant had a sufficient understanding of the Plea Agreement, such that his plea was not coerced, but was voluntary and intelligent.   Based on a review of the entire record, the Court is left with a firm conviction that Ieremia has simply had a change of heart, as discussed more fully below, an insufficient basis to permit a withdrawal of his plea.

\\\

\\\

\\\

\\\

## II.    Former Counsel Did Not "Grossly Mischaracterize" Ieremia's Sentencing Exposure

Ieremia asserts that several fair and just reasons exist to allow withdrawal of his plea.[13]   However, he primarily attacks the disparity between the 11.5 years that Schum purportedly promised him and the approximately 24- to 30-year guideline range provided in the draft PSR.   Schum's determination was based on a total offense level of 32 at criminal history category II, whereas the draft PSR's

---

[13]For example, Ieremia alleges that Schum did not provide him with all of the discovery in this complex case with multiple defendants.   That contention, however, is contradicted by the credible evidence.   As discussed above, Schum testified that he did provide the Government's initial production to Ieremia, consisting of lab reports and a recording of his interview with law enforcement, and that he later discussed the contents of more than a hundred of the most significant wire intercepts with Ieremia.   Schum also testified that he provided eight CDs of discovery for Ieremia to review at FDC Honolulu's law library.   Although Ieremia asserts that he never received those CDs until his current counsel provided them, well after his change of plea, the evidence in the record demonstrates that that assertion is not credible.   Ieremia reserved computer time at the FDC Honolulu law library on multiple occasions between February and March 2017 for purposes of reviewing the CDs that he now claims he never received.   Dkt No. 451 at ¶ 11. Further, he admits that he never inquired with either Schum or the FDC Honolulu staff regarding the whereabouts of these CDs following what he acknowledges was Schum's delivery of the CDs to FDC Honolulu.   The only logical and reasonable conclusion then was that he had the CDs in his possession, together with ample opportunity to review them.

Further, even if the discovery CDs had not been made available to him, Ieremia advances no causal connection between that alleged shortcoming and his decision to change his plea.   Still more, because Ieremia was aware of the alleged shortcoming in Schum's discovery production and/or review at the time he entered his plea on May 5, 2017, he has not demonstrated a fair and just reason to withdraw that did not exist when he entered his plea.   *See United States v. Mayweather*, 634 F.3d 498, 506 (9th Cir. 2010) (Affirming the "longstanding interpretation of Rule 11(d)(2)(B) to allow plea withdrawal for any reason '*that did not exist when the defendant entered his plea.*' We have never held that the rule also embraces circumstances known to a defendant at the time of the guilty plea, and we decline to do so now.") (quoting *McTiernan*, 428 F.3d at 805); *cf. id.* at 504 ("When the basis for withdrawal is erroneous or inadequate legal advice, the defendant's burden is simply to show that proper advice 'could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty had he known about the [grounds for withdrawal] prior to pleading.'") (quoting *Garcia*, 401 F.3d at 1011–12).

determination was based on a total offense level of 38 at criminal history category III.

What Ieremia does not acknowledge, however, beyond the draft and non-binding nature of the PSR is that the bases for Schum's so-called sentencing prediction do not belong to Schum alone. That is, the Plea Agreement contains a *negotiated* base and total offense level of 32, binding on the United States, which, in turn, constrains the "relevant conduct" for which at least the United States can urge defendant to be held responsible.[14]  Under these circumstances, the Court rejects Ieremia's arguments that Schum's representation of 11.5 years as his "best" case scenario was a "gross mischaracterization." Schum's prediction is not grossly off the mark considering a criminal history category of II or III, plus the Government's stipulation to the total offense level of 32, puts that prediction squarely in defendant's guideline range. All of this—coupled with the Court's role in independently assessing relevant conduct under U.S.S.G. § 1B1.3(a), and to apply the 18 U.S.C. § 3553(a) factors as discussed with Ieremia at the change of plea hearing—leads to the conclusion that Schum did not grossly mischaracterize Ieremia's sentencing exposure.

---

[14]It is "relevant conduct" that largely explains the offense level disparity between defendant and the Govt's stipulated position on the one hand, and the PSR's position on the other.

It is well-established that an erroneous prediction by a defense attorney concerning sentencing generally does not entitle a defendant to withdraw his guilty plea. *Garcia*, 909 F.2d at 1348; *United States v. Briggs*, 623 F.3d 724, 728 (9th Cir. 2010) ("We have previously expressed skepticism at the proposition that a defendant may change his plea solely because he underestimated the severity of the sentence he faced."). The Ninth Circuit has recognized a limited exception to this rule, upon which Ieremia now relies, when there has been a "gross mischaracterization" of the likely outcome of the case. *Davis*, 428 F.3d at 805; *see also Briggs*, 623 F.3d at 728–29 (applying *Davis* and limiting withdrawal based on an underestimation of the defendant's sentencing exposure to "exceptional circumstances"). In *Davis*, defense counsel told the defendant that his potential sentencing range was probation to eight years, and the defendant believed, based on counsel's advice, that if he pleaded guilty, he would receive probation. *Davis*, 428 F.3d at 805. The trial court concluded that defense counsel grossly mischaracterized defendant's possible sentence because there was "little, if any, possibility" under the guidelines that he "would be sentenced to probation or anything close to probation." *Id.*[15] Relying heavily on the district court's finding that defense counsel affirmatively

_____

[15]Although defendant did not learn of his attorney's gross mischaracterization until he received the presentence report, after he pled guilty, the district court determined that defendant could not withdraw his guilty plea because he did not prove actual prejudice. *Id.* at 806. The Ninth Circuit reversed, holding that no showing of actual prejudice was required. *Id.*

misrepresented defendant's likely sentencing range, the Ninth Circuit remanded to the district court to "decide anew" the motion to withdraw guilty plea using the correct legal standard.   *Id.* at 807–08.

Under the circumstances, Schum's representations to Ieremia regarding his potential sentence cannot be deemed a gross mischaracterization under *Davis*.   In *Davis* there was "little, if any, possibility" of defendant receiving a sentence of probation because the court would have had to "depart 20 to 30 levels" to get there. *Davis*, 428 F.3d at 806–07.   Here, by contrast, the Court would likely have to vary down 7 levels from the recommendations in the draft PSR in order to reach the 11.5-year sentencing range predicted not only by counsel, but also by the United States.[16]   Moreover, counsel identified the 11.5 years as Ieremia's "best" case or realistic outcome, not his guaranteed outcome.   Simply put, Ieremia is not in the same position as the defendant in *Davis*.   See *also Briggs*, 623 F.3d at 728–29 (affirming denial of motion to withdraw guilty plea where defendant stated he expected a sentence in the range of 200 months imprisonment, but the presentence report calculated a guideline range of 360 months to life, because defendant failed to substantiate his allegations of inadequate legal advice, and when he pled guilty, defendant was aware that he faced a substantial term of incarceration).

_____

[16]The draft PSR recommended a total offense level 38/criminal history category III, compared to a total offense level 31/criminal history category III that roughly approximates the levels necessary to reach Ieremia's "best" case term of imprisonment of 11.5 years.

Ieremia fares no better under the facts of the other case he chiefly relies upon, *United States v. Alvarado*, 622 F. Supp. 2d 988 (E.D. Cal. 2009). In *Alvarado*, the district court denied the motion to withdraw guilty plea when defense counsel predicted a 16- to 17-year sentence whereas defendant's actual within-guidelines sentencing exposure exceeded 24 years. The *Alvarado* court rejected the comparison to *Davis*, wherein "a probationary sentence was only a theoretical possibility, in this case, the prediction of 16 years is an outcome that defense counsel specifically negotiated [and] [i]f Alvarado succeeded in challenging the enhancement at sentencing, the plea agreement expressly required the Government to recommend the 16 year sentence." *Alvarado*, 622 F. Supp. 2d at 994. In other words, "Alvarado is asking to withdraw his plea because his attorney predicted a sentence wholly consistent with the terms of that agreement." *Id.* The district court rejected his "gross mischaracterization" argument: "Such a prediction cannot provide a 'fair and just' reason to permit withdrawal of Alvarado's guilty plea." *Id.*

Likewise here, the 11.5 years that Ieremia labels a "gross mischaracterization" is far from "a theoretical possibility," but is instead "an outcome that defense counsel specifically negotiated" for Ieremia. *Alvarado*, 622 F. Supp. 2d at 994. Indeed, here, the circumstances are even less egregious, and the alleged mischaracterization, less gross. The Plea Agreement that former defense counsel negotiated requires the Government to agree to a total offense level of 32,

and depending upon the determination of his criminal history as category II or III, that offense level could result in a guideline range as low as 121 to 151 months, approximating the 11.5 year term of imprisonment relied upon by Ieremia.   In order to reach that stipulated total offense level and guideline range, Ieremia faces no contingency, as was the case in *Alvarado*—there is no enhancement challenge on which Ieremia would have to first prevail before receiving the Government's sentencing concurrence—Ieremia is already entitled to that concurrence by virtue of the stipulations in the Plea Agreement.

Ieremia acknowledged that the Court would determine the applicable guideline range and that any sentence imposed may be different from the estimates provided by Schum or the United States or Probation.   His under oath statements are consistent with the credible testimony offered by Schum, outlined above.   *See Briggs*, 623 F.3d at 728 ("We take the district court's detailed colloquy with [defendant] as strong evidence that [defendant] understood the meaning of his actions.").   The Court informed defendant, during the Rule 11 hearing, of the statutory maximum sentence that could apply, and this information was also set forth in the Plea Agreement.   This, combined with the Court's Rule 11 colloquy regarding the applicability of the guidelines as well as Schum's conversations with defendant, would have necessarily resolved any doubts that he harbored regarding his sentencing exposure in this case.

It must be noted that although Ieremia relies heavily on the Probation Office's calculation of his criminal history level, the inclusion of certain relevant conduct to calculate his total offense level, and the resulting guideline range set forth in the draft PSR, the Court has not yet determined whether any of the above will apply in this case. As the Court explained to defendant at his change of plea hearing, the Probation Office's determination of these issues, while instructive, is not determinative. The Court—not anyone else—will preside over Ieremia's sentencing, and the Court will ultimately decide what constitutes relevant conduct. His counsel, however, specifically negotiated a stipulated set of relevant conduct on his behalf, to which the United States is bound. *Cf. United States v. Spear*, No. CR 07-00299 DAE, 2011 WL 3704967, at *19 (D. Haw. Aug. 24, 2011), *aff'd*, 577 F. App'x 726 (9th Cir. 2014) ("If Defendant succeeds in arguing that the counts to which he did not plead guilty, and other uncharged acts, are not relevant conduct, then only the counts to which Defendant pleaded guilty will be incorporated into the base offense level.")

Schum did not grossly mischaracterize Ieremia's sentencing range. Although it is premature to determine whether his representation of Ieremia's "best" case of 11.5 years will ultimately prevail, it is not a near impossibility, as was the case in *Davis*. Schum's "prediction cannot be proved correct or incorrect until the future event has occurred." *United States v. Oliveros-Orosco*, 942 F.2d 644, 646

(9th Cir. 1991). In any event, on this record, the Court simply cannot conclude that defendant was misinformed as to his possible sentencing exposure. To the contrary, it appears that Ieremia "only wanted to change his plea once he was face-to-face with the full consequences of his conduct." *Briggs*, 623 F.3d at 729; *see also Nostratis*, 321 F.3d at 1211 ("Defendants cannot plead guilty to 'test the weight of potential punishment' and then withdraw their plea if the sentence is 'unexpectedly severe.'") (citation omitted); *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("Nor do we believe that fear of receiving a harsh sentence, standing alone, constitutes a 'fair and just' reason to withdraw a plea, even if counsel's initial advice as to length of plea turned out to be inaccurate."). Under these circumstances, Ieremia's sentencing expectations do not constitute a "fair and just reason" for withdrawal.

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

## <u>CONCLUSION</u>

For the foregoing reasons, Ieremia has failed to show that his guilty plea was invalid, or that there is some other fair and just reason for its withdrawal, and his Motion to Withdraw his Guilty Plea, Dkt. No. 408, is DENIED.

IT IS SO ORDERED.

DATED: July 27, 2018 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*United States v. Ieremia, et al.,* CR. NO. 16-00744 (01) DKW; **ORDER DENYING DEFENDANT JEREMIAH IEREMIA'S MOTION TO WITHDRAW HIS GUILTY PLEA**