IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEREMIAH IEREMIA,<br><br>Defendant. | Case No. 16-cr-00744-DKW-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Approximately 50 months into his 170-month sentence, Defendant Jeremiah Ieremia asks the Court to reduce his sentence to time served because his obesity, in light of the COVID-19 pandemic, presents an extraordinary and compelling reason warranting such a reduction. The Court disagrees, and, for the reasons set forth below, his motion is DENIED.

## RELEVANT BACKGROUND

On May 7, 2017, Ieremia pled guilty to methamphetamine distribution-related offenses.[1] Dkt. No. 187. On October 18, 2018, the Court sentenced Ieremia to 170 months' imprisonment and five years of supervised release. Dkt. Nos. 529, 530. The Court imposed a term of imprisonment on the higher end of the guideline range due to the quantity of drugs involved, Ieremia's role as a

---

[1] After a hearing, the Court denied Ieremia's motion to withdraw his guilty plea. *See* Dkt. Nos. 408, 439, 459, 467.

manager or supervisor in the drug distribution scheme, and the quality of his criminal history, which includes a history of violence. Dkt. No. 531 at 2.

On December 16, 2020, Ieremia filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate release motion"). Dkt. No. 813. Ieremia argues his obesity, in light of the COVID-19 pandemic, presents an extraordinary and compelling reason warranting his immediate release. *Id.* On December 30, 2020, the Government filed a response opposing any sentence reduction, Dkt. No. 819, to which Ieremia replied on January 6, 2021, Dkt. No. 821. This order follows.

## **LEGAL STANDARD**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

2

1. the inmate exhausted "all administrative rights to appeal a failure of the [Bureau of Prisons] to bring a motion" on his behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable [Sentencing Commission] policy statements";

3. the court considers the sentencing factors set forth in 18 U.S.C. § 3553(a) and finds the inmate is "not a danger to the safety of any other person or the community," as provided under 18 U.S.C. § 3142(g).

*See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13 (policy statement).  The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance.  *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## **DISCUSSION**

The parties dispute only the second and third requirements detailed above.[2]  As explained below, Ieremia fails to meet his burden of demonstrating an extraordinary and compelling reason warranting a sentence reduction.  Even if he had, the Court finds the goals of sentencing set forth in Section 3553(a) would not

---

[2]The Government concedes exhaustion.  *See* Dkt. No. 819 at 6–7; *see also* Dkt. No. 813-6 (compassionate release request sent to warden on August 20, 2020); Dkt. No. 813-7 (warden's denial of Ieremia's request on October 13, 2020).

Case 1:16-cr-00744-DKW   Document 822   Filed 01/07/21   Page 4 of 10   PageID #: 7802

be served if a sentence reduction is granted, and Ieremia remains a danger to the community. For these reasons, his motion is DENIED.

## I.   Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons" and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (the "Commission"). As this Court has explained, it is bound by the Commission's Commentary in U.S.S.G. § 1B1.13 regarding what constitutes an "extraordinary and compelling" reason warranting a sentence reduction. *See, e.g.*, *United States v. Aruda*, No. 14-CR-00577-DKW, 2020 WL 4043496, *2–*5 (D. Haw. July 17, 2020).[3]

---

[3]The Court declines Ieremia's invitation to reconsider its prior holdings on this issue, *see* Dkt. No. 813 at 5–10; Dkt. No. 821 at 2–5. The Court discussed its holding at length in *Aruda*, 2020 WL 4043496, at *2–5, and nothing Ieremia cites since *Aruda* compels a different result. *See United States v. Carpenter*, 816 Fed. Appx. 159, 159–60 (9th Cir. 2020) (citing policy statement in finding the defendant failed to meet his burden of showing an extraordinary and compelling reason warranting release); *United States v. Arceneaux*, 830 Fed. Appx. 859 (9th Cir. 2020) (citing policy statement in finding the court had not abused its discretion by considering the danger the defendant posed to the community). If this Court did not find the policy statement controlling, Ieremia imagines he would be entitled to the relief he seeks. But the terms "extraordinary" and "compelling" must mean something and even courts that do not find the policy statement to be controlling look, largely, at the same criteria in the policy statement and considered by this Court. *See, e.g.*, *United States v. Kauwe*, 467 F. Supp. 3d 940, 946 (D. Nev. 2020) (considering whether "(1) the combination of [the defendant's] age and underlying health conditions elevate his risk of becoming seriously ill were he to contract COVID-19 . . . and (2) he faces greater risk from COVID-19 if he continues to be housed at his current facility instead of being released"); *United States v. Williams*, 2020 WL 4586860 at *3 (D. Haw. Aug. 10, 2020) (denying compassionate release because the defendant failed to demonstrate a large number of past or present infections at the facility); *United States v. Kim*, 2020 WL 3213312, at *3 (D. Haw. June 15, 2020) (denying compassionate release because the "court cannot tell that there is a substantial risk that [the defendant] will be reinfected"). Whether the policy statement is binding

Accordingly, the Court applies the following framework to determine whether COVID-19 presents an extraordinary and compelling reason warranting a reduction in sentence:

> [A]n inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover."

*United States v. Kazanowski*, No. 15-CR-00459-DKW-5, 2020 WL 3578310, at *7 (D. Haw. July 1, 2020) (alterations in original) (quoting U.S.S.G. §1B1.13 n.1(A)).

The Court recognizes Ieremia suffers from a condition—obesity[4]— recognized by the CDC as placing him at greater risk of having a severe reaction to COVID-19.[5]  The Court also finds that were he to contract the virus, his ability to provide self-care within the facility and recover is in serious doubt.  *See* U.S.S.G. §1B1.13 n.1(A).  During a prior surge of COVID-19 cases at USP Lompoc, where

---

is, in other words, of little practical consequence because courts, by and large, consider the same criteria regardless (*e.g.,* the defendant's health conditions and risk at his facility).

[4]Ieremia is obese, with a BMI of 38.8.  Dkt. No. 818 at 13 (listing his weight as 294 pounds on December 2, 2020); Dkt. No. 507 at 27 (listing his height as 73 inches); s*ee also* Dkt. No. 813-3 at 10; Dkt. No. 819 at 7–8.

[5]*See COVID-19 (Coronavirus Disease): People at Increased Risk for Severe Illness –People with Certain Medical Conditions*, CDC (updated Dec. 29, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 6, 2021) (listing those with BMIs of 30 or higher as having an increased risk of severe illness if they contract COVID-19).

Ieremia is housed, two inmates died.[6]  And Ieremia suffered significant symptoms from his first bout with the virus.  *See* Dkt. No. 818 at 45–46 (detailing symptoms), 78 (showing he was diagnosed with COVID-19 pneumonia and required supplemental oxygen).  But Ieremia fails to show there is a significant risk of becoming seriously ill from COVID-19 because he has, in fact, already contracted and recovered from it.

The Court acknowledges that USP Lompoc has struggled in containing the spread of COVID-19.[7]  While the Bureau of Prisons ("BOP") appears to have initially slowed the spread, cases of COVID-19 are again on the rise in that facility. As of January 6, 2020, the BOP reports 49 inmates and 7 staff are testing positive.[8] These numbers clearly demonstrate an upward trend.  *See* Dkt. No. 821 at 6 (documenting trend). When the Government responded to Ieremia's motion on December 30, 2020, just 10 inmates were testing positive for the virus.  *See* Dkt. No. 819 at 8–9.  That such a sharp increase has occurred at a facility that has

---

[6]*See* Press Releases, BOP, https://www.bop.gov/resources/press_releases.jsp (last visited Jan. 5, 2021).

[7]*See* Dave Minsky, *Coronavirus Outbreak Reported at Lompoc Prison Exceeds 60 Cases, Among Nation's Highest*, Lompoc Record (last updated May 21, 2020), https://lompocrecord.com/news/local/crime-and-courts/coronavirus-outbreak-reported-at-lompoc-prison-exceeds-60-cases-among-nations-highest/article_b1966dbc-0017-5b59-8a10-c385aa3072f5.html (last visited Jan. 6, 2021); *see also* Dkt. No. 813-8 (report detailing the facility's challenges with COVID-19).

[8]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 6, 2021).

struggled in the past to contain the spread is enough for the Court to find there is a high risk to the average inmate at USP Lompoc of contracting the virus.

However, that does not mean there is a high risk that *Ieremia* will contract the virus. Ieremia has already contracted and recovered from COVID-19. Dkt. No. 818 at 19 (listing COVID-19 as a resolved condition), 38 (reporting no symptoms 19 days after his initial COVID-19-related evaluation). While the Court recognizes that some reinfections are "expected," the CDC explains that reinfections "remain rare."[9] In short, the Court agrees with the Government: "[w]hile no one is claiming that it is impossible to contract COVID-19 a second time—there are a few known examples around the globe—the evidence currently available indicates that it is at least unlikely." Dkt. No. 819 at 10. A rare chance of contracting a virus once recovered from simply does not meet the bar for an extraordinary and compelling reason warranting release.

Because Ieremia has failed to demonstrate a high risk of contracting the virus a second time, his motion is DENIED. *See United States v. Kim*, 2020 WL 3213312 (D. Haw. June 15, 2020) (citing a lack of evidence about the likelihood of reinfection in denying compassionate release).

---

[9]*COVID-19 (Coronavirus Disease): Reinfection with COVID-19*, CDC (updated Oct. 27, 2020), https://www.cdc.gov/coronavirus /2019-ncov/your-health/reinfection.html (last visited Jan. 6, 2021).

## II.    <u>Section 3553(a) Factors & Risk of Danger to the Community</u>

Even if Ieremia presented an extraordinary and compelling reason warranting a sentence reduction, the Court must consider any such reduction in light of the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine Ieremia is "not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)."[10]  *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

Considering the Section 3553(a) factors, the Court finds Ieremia's 170-month sentence is, as it was at sentencing, "sufficient, but not greater than necessary . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public."  *See* 18 U.S.C. §3553(a)(2).  To date, Ieremia has served roughly 50 months or just under 30 percent of his sentence.  Dkt. No. 507 at 2 (Ieremia has been detained since December 8, 2016).  This is not sufficient to meet the goals of sentencing.  In the drug distribution scheme underpinning Ieremia's conviction, he was no passive

---

[10]Ieremia argues that the binding effect of Sentencing Commission policy statements controls whether the Court may consider dangerousness as part of its sentence reduction analysis.  Dkt. No. 813-3 at 8 (arguing Ieremia need not "categorically prove that he poses no risk of danger"); Dkt. No. 821 at 4–5.  As the Court recently explained, it disagrees.  *United States v. Lefiti*, Criminal No. 15-00459-DKW-1, 2020 WL 7502449, *4 n.8 (D. Haw. Dec. 21, 2020).  Indeed, it is hard to imagine dangerousness not being a part of any early release determination, including under Ieremia's "totality of the circumstances" approach.  Dkt. No. 813-3 at 7.

player. Rather, as he admits, Dkt. No. 187 at 11, he was a manager or supervisor. Thus, not only was his conduct unlawful but he influenced and directed the unlawful conduct of others.

Moreover, Ieremia is just thirty years old, but he already has sixteen years of criminal history. Dkt. No. 507 at 2, 19–24. That history is particularly concerning to the Court because it includes convictions for two crimes of violence—battery and assault with a deadly weapon—as a juvenile and one crime of violence—robbery, which included use of a firearm—as an adult. *Id.* Clearly, none of his prior run-ins with the criminal justice system have deterred Ieremia from engaging in further criminal activity. The need for Ieremia to actually serve a significant sentence for his conviction in this case is necessary "to afford adequate deterrence of criminal conduct." 18 U.S.C. § 3553(a)(2)(B).

Finally, due to Ieremia's criminal history and, in particular, his convictions for crimes of violence, the Court finds he remains a danger to the community, and no conditions of release could reasonably assure that the community is safe from his further crimes. *See* 18 U.S.C. §§ 3142(g), 3553(a)(1)(C). Accordingly, the Court refuses to undermine the goals of sentencing by releasing Ieremia at this time. *See* 18 U.S.C. § 3553(a). For this separate and sufficient reason, Ieremia's compassionate release motion is DENIED.

## <u>CONCLUSION</u>

For the reasons set forth herein, Ieremia's motion for compassionate release, Dkt. No. 813, is DENIED.

IT IS SO ORDERED.

DATED: January 7, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*United States v. Jeremiah Ieremia*, Criminal No. 16-00744-DKW-1, **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**